ROBERT B. SYKES (#3180)
bob@sykesinjurylaw.com
ALYSON E. CARTER (#9886)
alyson@sykesinjurylaw.com
**ROBERT B. SYKES & ASSOCIATES, P.C.**
311 South State Street, Suite 240
Salt Lake City, Utah  84111
Telephone (801) 533-0222
Facsimile (801) 533-8081
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | | |
|---|---|---|
| TAMMY MARTINEZ, mother, personal representative, and heir of CARLOS UMANA, deceased; and THE ESTATE OF CARLOS UMANA, by his Personal Representative, Tammy Martinez, | ) ) ) ) ) ) | **SECOND AMENDED COMPLAINT AND JURY DEMAND** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| JIM WINDER, Sheriff of Salt Lake County, in his individual and official capacities; MHM CORRECTIONAL SERVICES, INC., a Corporation; WELLCON, INC., a Corporation; SALT LAKE COUNTY, a Political Subdivision; and JOHN AND JANE DOE OFFICERS/EMPLOYEES 1-20, in their individual and official capacities, | ) ) ) ) ) ) ) ) ) ) | Civil No. 2:11-cv-670-TS Judge Ted Stewart |
| Defendants. | ) ) ) | |

Plaintiffs Tammy Martinez and the Estate of Carlos Umana, through counsel, complain and allege for causes of action against Defendants as follows:

## PRELIMINARY STATEMENT

This is a civil rights action in which the Plaintiffs seek relief for the Defendants' violation of Mr. Umana's rights guaranteed by the United States Constitution, specifically the Eighth and Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Utah. Plaintiffs seek damages, both compensatory and punitive; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This is further an action at law to redress a deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to the Plaintiff by the Eighth and Fourteenth Amendments of the Constitution of the United States, and arises under the law and statutes of the State of Utah.

## JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and federal law, particularly under the provisions of the Eighth and/or Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

2.      This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3.      The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Central Division.  Venue is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

4.      Plaintiffs are seeking damages under federal and state law pursuant to the claims for relief specified below, and in amounts specified below.

5.      This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

6.      This Court also has jurisdiction over any State claims Plaintiffs have brought, pursuant to 28 U.S.C. § 1367.

<u>PARTIES</u>

7.      Plaintiff **Tammy Martinez** is a citizen of the United States of America and a resident of Salt Lake County, State of Utah.  Ms. Martinez is mother, heir, and personal representative of Carlos Umana, deceased ("Carlos"). At all relevant times herein, according to information and belief, Mr. Umana was a pretrial detainee at the Salt Lake County Adult Detention Facility located in South Salt Lake City, State of Utah.

8.      **Carlos Umana Sr.** was the father of Carlos Umana, and is an heir of Carlos Umana, entitled to all notice and all rights of heirship in these proceedings, in like manner to Tammy Martinez.

9.      **The Estate of Carlos Umana** is also a Plaintiff in this case, by and through Tammy Martinez as personal representative of Carlos Umana, deceased.

10.     Defendant **Jim Winder** is the elected Sheriff of Salt Lake County, and at all relevant times herein, was functioning as the Sheriff of Salt Lake County.  As the Sheriff, he is the policymaker for the Salt Lake County Sheriff's Office and all of the facilities that the Sheriff's Office oversees or manages.  As relevant to this case, Sheriff Winder and the Salt Lake County

Sheriff's Office has the responsibility to manage, create policy for, and administer such policy to the Salt Lake County Adult Detention Facility (hereinafter, the "Facility").  Sheriff Winder was also responsible for administering and training employees and contractors who attended to inmates and pretrial detainees with mental health problems, including eating disorders and hunger strikes.  Plaintiffs are suing Sheriff Winder in his individual and official capacities.

11.    Defendant **MHM Correctional Services, Inc.** ("MHM") is a Virginia corporation headquartered in Vienna, Virginia.  MHM is a leading national provider of mental health and other healthcare services to state and local government agencies.  MHM serves individuals in many facilities nationwide. MHM was contracted by Salt Lake County and was responsible for supplying, administering, and training employees and contractors who attended to inmates and pretrial detainees with mental health problems, including eating disorders and hunger strikes.  Plaintiffs are suing MHM in its individual, official, and corporate capacities.

12.    Additionally, MHM is sued in the capacity of a principal for the negligent and otherwise wrongful acts of its agents.

13.    At all relevant times herein, MHM was a provider of mental health services at the Facility, and as such, was a "state actor."

14.    Defendant **Wellcon, Inc.** ("Wellcon") is a correctional and institutional healthcare provider serving the Salt Lake County Adult Detention Facility.   At all times relevant herein, **Wellcon** was contracted by Salt Lake County and was responsible for supplying, administering, and training employees and contractors who attended to the health needs of inmates and pretrial detainees.   Plaintiffs are suing Wellcon in its individual, official, and corporate capacities.

15.    Additionally, Wellcon is sued in the capacity of a principal for the negligent and otherwise wrongful acts of its agents.

16.    At all relevant times herein, Wellcon was a provider of healthcare services at the Facility, and as such, was a "state actor."

17.    At all relevant times herein, Defendant **Salt Lake County** was the employer, operator, and/or administrator of the Facility, and was a political subdivision organized and existing under the laws of the State of Utah.  **Salt Lake County,** and its agents, are state actors and are responsible for the day-to-day running of the Facility as well as the policy-making, training, and supervision of

the employees of the Facility.  Among other things, Salt Lake County was responsible to train and supervise its employees to manage and attend to inmates and pretrial detainees, like Carlos, who had mental health issues and concerns, and who exhibited serious self-destructive behavior and conduct, such as starving himself.  Plaintiffs are suing Salt Lake County in its official capacity.  The deliberate indifference of Salt Lake County and its agents allowed Carlos to starve to death.

18.    At all relevant times herein, "**DOE OFFICERS 1-5**" were employed as guards, supervisors, or managers at the Facility.  Doe  Officers 1-5 were at all times herein state actors, and acting under the color of law.  Plaintiffs are suing Doe Officers 1-5 in their individual and official capacities as guards, supervisors, or managers at the Facility.  Their deliberate indifference to Carlos' serious medical needs caused his death.

19.    At all relevant times herein, "**DOE EMPLOYEES 6-10**" were employed or contracted by **MHM,** as nurses, medical providers, and/or mental health professionals, to provide mental health and other healthcare services to those in custody at the Facility.  At all times herein, Doe Employees 6-10 were state actors, in accordance with established law.  Plaintiffs are suing Doe

Employees 6-10 in both their individual and official capacities. These MHM employees and contractors are sued in their individual, official, and corporate capacities. Their deliberate indifference caused the death of Carlos.

20.   At all relevant times herein, "**DOE EMPLOYEES 11-15**" were employed or contracted by **Wellcon, Inc.,** as nurses, medical providers, and/or healthcare professionals, to provide healthcare services to those in custody at the Facility. At all times herein, Doe Employees 11-15 were state actors, in accordance with established law. Plaintiffs are suing Doe Employees 11-15 in their individual, official, and corporate capacities. Their deliberate indifference caused the death of Carlos.

21.   **DOES 16-20** are state actors who are here identified as unnamed individual(s) who were employed by Salt Lake County, MHM, and/or Wellcon. They are individuals who were directly involved and participated in Carlos' control and care, were knowledgeable about his condition, and are personally responsible, directly or indirectly, for his death through deliberate indifference. DOES 16-20 are being sued both in their individual and official capacities. Plaintiffs have not yet been able to determine their exact identity, but will do so during fact discovery.

## FACTUAL ALLEGATIONS

22.     In or about October 2010, Carlos Umana, then age 19, was alleged to have committed a criminal offense and was incarcerated at the Facility. Carlos was awaiting a psychological assessment to determine if he was competent to stand trial.  Carlos was therefore, Plaintiffs believe, a pretrial detainee.

23.     Facility officials were notified in November 2010 by his mother that Carlos had attempted suicide on a prior date, and that he was still at risk of suicide.

24.     At the time he first entered the Facility, Carlos weighed approximately 180 pounds and had a body mass index[1] (BMI) of 27.6 kg/m$^2$.

25.     Carlos had been diagnosed as bi-polar and schizophrenic prior to his incarceration.  Upon Carlos' incarceration, on or about October 29, 2010, Carlos' mother, Plaintiff Tammy Martinez, offered Carlos' medications to a nurse on the staff at the Facility.  The nurse refused to accept the medications, but reportedly noted what the medications were, and a Facility agent told Ms. Martinez the prescriptions would be filled in-house.

---

[1] Body mass index is calculated by dividing a person's weight in kilograms by the square of the person's height in meters.  A normal BMI is within the range of 18.5 - 25.

26.   Between October 2010 and the end of February 2011, Carlos believed that persons preparing his food at the Facility were trying to serve him poisoned food.  There was likely no substance to those beliefs, yet they were sincerely held by Carlos, who firmly believed that he was being poisoned.  As a result of these beliefs, Carlos lost more than 100 pounds of body weight in four (4) months.  This unusual and extreme weight loss was regularly observed by Defendants.

27.   Carlos requested sealed and packaged food, because the packaging would show whether the food had been tampered with.  This request was either denied, or Carlos was unable to obtain sufficient packaged food to keep him from starving to death.

28.   Carlos died of starvation and dehydration while in custody on February 27, 2011, after roughly four months of pretrial detention.

29.   When he died in custody, Carlos weighed 77 pounds and had a BMI of 13 kg/m$^2$.  He had lost 58% of his body weight under the direct observation and supervision of Defendants.

30.   Defendants were aware that Carlos was starving due to his refusal to eat or take his medications, but they failed to intervene.

31.    The Utah Medical Examiner's toxicology testing after Carlos'
death showed no drugs or prescription medications in his system.

32.    Plaintiffs and other heirs enjoyed a close relationship with
Carlos, and his death has deprived them of the close society and companionship
they previously enjoyed with Carlos.

33.    "The constitutional protection against deliberate indifference
to a prisoner's serious medical needs. . . applies to pretrial detainees through the
due process clause of the Fourteenth Amendment. *Garcia v. Salt Lake County,*
768 F.2d 303, 307 (10th Cir. 1985)." *Howard v. Dickerson,* 34 F.3d 978 (10th
Cir. 1994).

## FIRST CLAIM FOR RELIEF

**Against All Defendants
In Their Individual and Official Capacities,
for Violations of the Eighth and/or Fourteenth Amendments
to the U.S. Constitution,
Cognizable Under 42 U.S.C. § 1983**

34.    The allegations contained in all paragraphs above are
incorporated by reference.

35.    Defendants had at least the following duties:

**a.**     to see that measures were in place to reasonably ensure inmates' and pretrial detainees' safety, including the safety of Carlos Umana;

**b.**     to attend to such measures and reasonably ensure inmates' and pretrial detainees' safety, including the safety of Carlos Umana;

**c.**     to see that measures were in place to reasonably ensure that inmates and pretrial detainees were eating enough to maintain their health, or to take steps to compel such maintenance when it was appropriate, such as in this case;

**d.**     to attend to such measures and reasonably ensure that inmates and pretrial detainees were eating enough to maintain their health, or to take steps to compel such maintenance when it was appropriate, such as in this case;

**e.**     to ensure that inmates and pretrial detainees, including Carlos, were provided a level of healthcare that a civilized society would think necessary;

**f.**     to ensure that inmates had and were taking their prescribed medications; and/or

      **g.**     to ensure that steps were taken to prevent inmates from starving to death.

      **36.**     Defendants breached these duties and were deliberately indifferent to Carlos' needs in at least the following particulars:

      **a.**     allowing Carlos to starve to death while in County custody;

      **b.**     failing to have policies and procedures in place, and/or by failing to adequately supervise or train employees and contractors in accordance with said policies and procedures, and/or by failing to attend to such policies and procedures so as to ensure the medical and nutritional safety of pretrial detainees such as Carlos;

      **c.**     failing to have policies and procedures in place, and/or by failing to adequately supervise or train its employees and contractors in accordance with said policies, and/or by failing to attend to such policies and procedures intended to ensure that pretrial detainees, such as Carlos, were provided a level of health care that a civilized society would think necessary;

      **d.**     failing to have policies and procedures in place, and/or by failing to adequately supervise or train its employees and contractors in

accordance with said policies, and/or by failing to attend to such policies and procedures intended to ensure the reasonable safety and health of inmates and detainees on a hunger strike or with mental health issues and/or suicidal tendencies, such as those exhibited by Carlos;

      **e.**    failing to have policies and procedures in place, and/or by failing to adequately supervise or train its employees and contractors in accordance with said policies, and/or by failing to attend to such policies and procedures intended to monitor inmates and detainees who were at risk of self-destructive actions or suicide; and/or

      **f.**    failing to intervene and prevent Carlos' death.

      37.    Repeatedly, and over a four month period, Defendants were deliberately indifferent to Carlos' serious medical needs, and/or the policies and procedures developed and administered by said Defendants were deficient and deliberately indifferent to foreseeable circumstances, such as inmates or pretrial detainees who developed serious medical needs, as was the case here.

      38.    As a direct and proximate result of Defendants' deliberate indifference, Carlos died while in custody from starvation and dehydration.

39.     Considering Carlos' severe loss of body weight and attendant medical issues over a four-month period, Carlos' death was manifestly foreseeable.

40.     Carlos was caused to endure prolonged pain and suffering leading up to the time of his death, even though his condition could have been stabilized.  Accordingly, the Estate of Carlos Umana seeks compensation in an amount to be determined at trial for the pain and suffering Carlos endured prior to his death.

41.     Plaintiff Ms. Martinez, an heir of her deceased son Carlos, seeks further compensatory damages for loss of society and companionship in an amount to be determined at trial.

42.     Further, due to the egregious nature of Defendants' indifference and reckless disregard for the health, safety, and the very life of Carlos Umana, Plaintiffs seek punitive damages against said Defendants as may be allowed by law.

## SECOND CLAIM FOR RELIEF

### Failure to Train and/or Supervise

**Against Sheriff Winder, Salt Lake County, MHM, and Wellcon,
In Violation Of The Eighth and/or Fourteenth Amendments,
Cognizable Under 42 U.S.C. § 1983**

43.     The allegations contained in the paragraphs above are incorporated by reference.

44.     Salt Lake County, MHM, and Wellcon are considered "persons" under 42 U.S.C. § 1983, and thus may be liable for causing a constitutional deprivation.

45.     Sheriff Winder, Salt Lake County, MHM officials, and Wellcon officials may be held liable in damages for constitutional wrongs caused by their failure to adequately train or supervise their subordinates due to their deliberate indifference.

46.     These Defendants foresaw, or should have foreseen, the possibility of inmates or detainees being taken into custody who may suffer from mental health conditions, suicidal tendencies, or who may engage in a hunger strike. However, these Defendants failed to provide adequate policies, procedures, or training to their employees or contractors to reasonably provide for the safety

and health of inmates and detainees with such mental health conditions or self-destructive or suicidal tendencies.  In this, these Defendants were deliberately indifferent to the health and safety of Carlos, which deliberate indifference caused his death.

47.     These Defendants, in their individual and official capacities, failed to provide adequate policies, procedures, or training to their employees or contractors in instructing and directing them to adequately monitor and respond to inmates with severe mental health problems that subsequently lead to serious and manifestly life-threatening medical conditions.  In this, these Defendants were deliberately indifferent to the health and safety of Carlos, which deliberate indifference caused his death.

48.     As a direct and proximate result of these Defendants' actions, inactions, and/or deliberate indifference, Carlos was deprived of his rights in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, i.e., he was deprived of his life without due process of law.

49.     The violation of Carlos' rights is actionable under 42 U.S.C. § 1983, and Plaintiffs are entitled to judgment against Defendants under that section for damages in an amount to be determined at trial.

50.    Plaintiffs are entitled to attorney's fees and costs against Defendants under 42 U.S.C. § 1988.

51.    Plaintiffs are entitled to punitive damages, as may be allowed by law, due to Defendants' willful, wanton, and grossly reckless conduct.

<u>THIRD CLAIM FOR RELIEF</u>

<u>Unlawful Custom, Policy or Practice - Laxity</u>

**Against All Defendants**
**In Violation Of The Eighth and/or Fourteenth Amendments,**
**Cognizable Under 42 U.S.C. § 1983**

52.    The allegations contained in the paragraphs above are incorporated by reference.

53.    Defendants' actions, of which complaint is herein made, occurred under the color and pretense of Utah State law, and in Defendants' official and individual capacities.

54.    If a governmental agency or agent thereof has a policy, custom, or practice that tolerates commission of unconstitutional acts by its officers and/or employees, then the agency and/or the employees or contractors who are in a position to set the policy, custom, or practice, may be held liable directly for the consequences of any unconstitutional acts by said persons.

55.    The County corrections officers and employees, Doe Officers 1-5, were deliberately indifferent and failed to notice and/or intercede to save Carlos from death, even though Carlos was literally starving to death over a four (4) month period.  His weight declined from 180 pounds down to around 70 pounds.  The Defendants' conduct, through those officers and employees, constituted and/or evidenced a custom of laxity regarding the supervision and monitoring of the health and safety of inmates, pretrial detainees, and the jail premises, which custom was or became a de facto official policy.  Fact discovery will bear out and provide further support of such policy, custom, or practice. Defendants' allowing such a policy, custom, or practice to develop and exist constituted deliberate indifference to the rights, health, and safety of the deceased, Carlos Umana.

56.    As a direct and proximate result of this custom of laxity, Carlos suffered and was deprived of his life without due process of law, as applied through the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

57.    Plaintiffs are entitled to judgment against these Defendants for damages in an amount to be proved at trial.

58.     Plaintiffs are further entitled to attorney's fees and costs against Defendants under 42 U.S.C. § 1988.

59.     Plaintiffs are further entitled to punitive damages as may be allowed by law due to Defendants' willful, wanton, and grossly reckless conduct.

## FOURTH CLAIM FOR RELIEF

### For Violations of the Constitution of the State of Utah,
### Article I, Section 7
### Against All Defendants,

60.     The allegations contained in the paragraphs above are incorporated by reference.

61.     Utah Code Article I, Section 7 states:

No person shall be deprived of life, liberty, or property without due process of law.

This statute mirrors a part of the Fourteenth Amendment (". . . nor shall any State deprive any person of life, liberty, or property, without due process of law. . .").

62.     The notice provision of the Utah Governmental Immunity Act, as delineated in Utah Code Ann §63G-7-401(2), does not apply to Plaintiffs' State constitutional claim because such claim is self executing.

63.     A Utah State constitutional provision is self executing:

> . . . if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers. In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if "no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed...."

*Spackman v. Box Elder School Dist.,* 16 P.3d 533, 535 (S.Ct. Utah 2000).  No

notice of claim is required for a self executing Utah constitutional claim:

> . . . when a plaintiff brings suit under a "self executing" Utah constitutional clause, no notice of claim is required. See, e.g., *Heughs Land, L.L.C. v. Holladay City,* 113 P.3d 1024, 1027 (Utah Ct.App.2005).

*Tiscareno v. Frasier,* 2009 WL 4730785 (D.Utah 2009) (reversed on other

grounds in 639 F.3d 1016 (10th Cir. 2011).

**64.**    Carlos Umana suffered a flagrant violation of his constitutional

rights when Defendants allowed him to starve to death while in custody.

**65.**    Existing remedies do not redress the injuries and death of Carlos

Umana, nor do they redress the injuries and damages to Carlos's mother, Tammy

Martinez, or his father, Carlos Umana Sr.

**66.**    Equitable relief was and is wholly inadequate to redress the

injuries and damages to Plaintiffs.

67.   Over a four month period, Defendants exhibited a shocking degree of deliberate indifference and reckless disregard for the serious and evident medical needs of Carlos Umana,

68.   As a direct and proximate result of Defendants' deliberate indifference and reckless disregard, Carlos died while in custody from starvation and dehydration.

69.   Considering Carlos' severe loss of body weight and attendant medical issues over a four-month period, Carlos' failing health, and ultimately his death, were manifestly foreseeable.

70.   Carlos was caused to endure prolonged pain and suffering leading up to the time of his death, even though his condition could have been stabilized.  Accordingly, Plaintiff (the Estate) seeks damages in an appropriate amount, to be determined at trial, as compensation for the pain and suffering Carlos endured prior to his death.

71.   Plaintiff Ms. Martinez, an heir of her deceased son Carlos, and Carlos' father, Carlos Umana Sr., seek further compensatory damages for loss of society and companionship in an amount to be determined at trial.

72.     Further, Plaintiffs seek punitive damages against Defendants as may be allowed by law.

## JURY DEMAND

Plaintiffs request a jury trial on all issues in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray judgment against Defendants as follows:

1.     For general compensatory damages in an amount to be determined at trial;

2.     For Carlos' pain and suffering in an amount to be determined at trial;

3.     For punitive damages as may be allowed by law;

4.     For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

5.     For Plaintiffs' costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and

6.     For such other and further relief as the Court deems just and proper.

DATED this 10th day of November, 2011.

**ROBERT B. SYKES & ASSOCIATES, P.C.**

 /s/ Robert B. Sykes
ROBERT B. SYKES
ALYSON E. CARTER
*Attorneys for Plaintiffs*